May it please the Court, my name is Candace Mitchell and I represent Mr. Ponce Ibarra in this matter. I want to turn first to the acceptance of responsibility issue, because I feel that it's the strongest one for Mr. Ponce Ibarra in consideration of the fact that the Court erroneously misapprehended the law with respect to whether acceptance of responsibility was applicable in this case. You know, it seemed to me that the transcript was a little ambiguous in that regard. And I read what the judge said, reading the whole thing together, that basically he felt that your client was not telling the truth and that that was the deciding factor in the decision. If that's the deciding factor, is that a permissible factor? It is one factor the Court can take into consideration in determining whether or not the acceptance of responsibility should be granted, but it's not the only factor that the Court should look at. In this case, Mr. Ponce Ibarra admitted to the elements of the charge well in advance of the time that he was brought before the Court. When he was meeting with the immigration officials, he informed them that he had come to the country legally, that he did not have permission to be here, that he had returned to the country in a manner that did not present him to the proper immigration officials. In short, he had informed the immigration officials prior to the beginning of the proceedings that he had violated all the conditions violated. But that doesn't entitle him to the point per se, does it? I believe not per se, but it's one of the factors, and I believe that it's an important factor for the Court to consider, the district court to consider, when determining whether or not acceptance of responsibility has been met. But I believe here that the district court focused more on the factual elements of whether or not asserting an affirmative defense would mean factually that Mr. Ponce Ibarra was contesting whether or not he was guilty. Well, the reason I asked you the earlier question is there's a difference between the Court saying, well, if you raise an affirmative defense, King's X, you can't get this point, versus saying, well, you've raised this affirmative defense, but I think you're lying through your teeth, and so I'm, you know, I don't feel that you have fully accepted responsibility in a way that I want to give you that extra point. And so that's what I'm trying to figure out, which is going on here. I believe that in this case, that Mr. Ponce Ibarra, even if the Court did not believe the circumstances surrounding Mr. Ponce Ibarra's reason for returning to the United States, the commentary to the guideline directs the court, the district court, to consider whether or not an individual truthfully admitted to the conduct comprising the offense of the conviction. And the offense of the conviction is a legal being found in the United States. In Mr. Ponce Ibarra's case, he admitted truthfully all of the elements to being found within the United States. But the district court still returned to whether or not it was the – returned to whether or not the assertion of the affirmative defense challenged whether or not he was admitting he was factually guilty. In the excerpts of record, pages 9 through 11, the district court said he's admitting certain elements which he then says are undone by the virtue of factual presentation of the appropriate affirmative defense. That wasn't the case. Mr. Ponce Ibarra never asserted that he factually challenged the elements of the offense that are being found in the United States. And that is what the district court first looked to, to determining whether or not acceptance of responsibility was appropriate in this case. And that is what the district court continuously returned to in determining whether or not acceptance of responsibility was appropriate in the district. Are we required to read it that narrowly, because I'm inclined to have a slightly broader reading of acceptance of responsibility for the course of conduct that led to the offense. And if we do it that way, the course of conduct, I think, includes his stated reason for coming to the United States, which I gather the district judge had some skepticism about. I believe that if Mr. Ponce Ibarra had been charged with attempted entry into the United States, the course of conduct that occurred prior to his entry would be more important to the determination about whether or not that, how it fed into the entire offense. However, because he was being charged with being found in the United States eight months after he reentered, that is no longer as applicable to the district court's determination as to whether or not he accepted responsibility. And in this case, the district court continued to return to, from a factual basis, Mr. Ponce, and again, I'm citing from the ER at 28. I think in this instance that the fact from a factual basis, Mr. Ponce Ibarra contends to pretend he's at the end of the day not guilty, should be found not guilty because of the factual inadequacy of the charge. But, you know, he's the court begins that discussion on page 27 by summarizing the basis on which I think it is inappropriate to provide for acceptance of responsibility in this instance is that I do not see a full and complete acceptance by this defendant to warrant the departure of two levels. And stated in that way, that's a permissible ground for denying this extra benefit, if you will. And I believe that would be correct had the district court started with the correct understanding of the law. And I believe that the record indicates that the district court in determining whether or not the two-level adjustment of responsibility could be applicable to Mr. Ponce Ibarra continuously returns to the fact that he asserted an affirmative defense, and in doing so, the district court believed that that was not true. But the court never said as a matter of law, this guy is ineligible. That's not at all what the court said. The court said, I don't think he has fully acknowledged everything that he did, which is quite different than saying once you raise this defense, you just are out of luck. That's the court never actually said that. No, but the court did assert that Mr. Ponce Ibarra, in asserting the affirmative defense, was challenging the factual findings of whether or not he could be found guilty, and that was not the case. Turning to the other issues briefly, while we in our papers refer to it as a duress defense, it is more correctly referred to as a necessity defense. The district court erred in denying Mr. Ponce Ibarra's presentation of a necessity defense to the jury. Mr. Ponce Ibarra established all the elements of the defense necessary to allow a jury to evaluate whether or not, factually, he could or could not qualify for the affirmative defense of necessity. Additionally, Mr. Ponce Ibarra, in his sentencing, established all the elements necessary to assert imperfect defense as a departure for his sentencing. He went forth before the Court and established that while he had not set forth everything that would make duress departure perfected, as the Court found in its rulings, the Mr. Ponce Ibarra did, however, show that he did have a fear that he, in not returning to the United States, he was presenting himself in a position where he could be exposed to greater danger by staying in Mexico. While his defense of duress may not have been perfected, it was sufficient enough for the Court to find that the departure was applicable to him. Absolutely. You have about a minute and a half if you wanted to save any time. And finally, I would just add that in imposing the supervised release conditions in this case, the district court made no specific and particularized explanation that supervised release would add an added measure of deterrence for Mr. Ponce Ibarra. Instead, it merely said that supervised release was going to be appropriate in the case, and the district court made no specific findings as to why, in Mr. Ponce Ibarra's case, it was appropriate. And I'll reserve the last minute. You may do that. Thank you. May it please the Court. Good morning. Owen Mardigan, arguing for the United States. It was not clear error for the district court to deny the reduction for acceptance of responsibility in this case for three reasons. First of all, it is not true that Mr. Ibarra fully accepted responsibility for his crime pretrial in this case. In fact, the record shows that when he was interviewed the district court did find that he was not truthful, correct? Did he specifically make that finding? Yes. He did say at sentencing that he simply found it difficult. I believe it's about page 25. I would have to check. I'm sorry, page 22, that he found the defendant's story difficult to believe. But the record also ---- Is that the same as not being truthful? Well, I think it is in this case, Your Honor. The district court says that he, on page 22, that he had issues with credibility in this case. Well, I mean, I suspect that's what the judge was concerned about. The application note says that the defendant one of the number one factors is truthfully admit all conduct. Yes. Okay. So what didn't he admit here? Well, he told the border agents when they interviewed him pretrial that he was drunk. He said he came here drunk. So he said that he had no fear of torture or persecution. So even at that point, he wasn't accepting responsibility for having actually knowingly entered this country. So that's the first time that he tries to accept responsibility. Contrition is also an issue, as this Court noted in Martinez-Martinez. And he's never contrite. I think the closest he comes is at sentencing when he asks. He says he's sorry for taking up the Court's time. But pretrial, which is the focus under Martinez-Martinez, he's never contrite. Several of the criteria ---- But he demonstrated that to Border Patrol or whoever picked him up, I think, if it was. I think he could start by not claiming that he was drunk. He could have started by claiming that he came to this country for a reason and then stated what that reason was. If it was because of persecution of torture, that would have been the time to say  But then he wasn't exactly true. So how would ---- so then would he have to say, I'm also regret or I'm sorry that I violated the United States laws? He would have, yes. I think he would have to show contrition. And part of contrition is truthfulness. I think they play together. But there are several factors that the Guidelines set forth at 3E1.1 that also come to play. Did he surrender to authorities as soon as possible? Certainly not the case here. He stayed in the United States until he was arrested. Was there any post-defense attempt at rehabilitation? There's no evidence of that. And was the acceptance responsibility timely? I don't think it was. There's any evidence of that in this case. So given the record, I don't think it was clear error for the district court to find there was no reduction warranted here. With respect to the duress defense, the district court was correct to deny it for three reasons. First of all, there was no imminent or impending harm, as this Court required in the Vasquez-Landover case. Second, there was no proffer that the defendant had no reasonable opportunity to escape, as this Court required in the Shryack case. And third, there was no proffer that the defendant immediately submitted to authorities once the alleged duress had passed, which is what the Court requires in Genel. Now, we've talked about it as a — as potentially another element, but in Genel and in Contrero-Pachon, the Court says it's intimately bound up in the reasonable opportunity-to-escape element, because once there is a reasonable opportunity to escape, the duress defense loses force, which is what happened immediately after Mr. Ibarra had crossed the border and had attained some position of safety. I do think it's correct to call this a duress defense and not a necessity defense. I think there's a little lack of clarity in the record about this, but analytically, Mr. Ibarra isn't claiming that some force of nature or natural disaster forced him across the border. He's claiming a person did it. That is analytically the duress defense. The words were used a little bit interchangeably below, and they are in other words, the two elements were the same, both defenses. The showing of an imminent harm and the showing of no reasonable opportunity to escape. Now, counsel just stated that the imminent harm element was met because Mr. Ibarra was afraid, because he was afraid that if he didn't come to the United States, he would be harmed by the drug cartels. But fear is not enough. This Court made that clear in Vasquez-Landover, that it's an objective test. Is the fear well-grounded, not just is there a subjective fear? Well, but if we believe his story, I think I would interpret his story as giving some ground for thinking he is in some danger and maybe even immediate danger. The cartels are not known for their sort of, I'm going to give you three warnings and in six months you haven't behaved, you know, you'll finally pay the price. So as to the respect to immediacy, it strikes me that perhaps the district judge engaged in a little fact-finding in order to conclude that there was no immediacy. How do you respond to that? Well, the Court didn't have to engage in any fact-finding, because the record's taking everything that Mr. Barr says as true is that someone came into his cab, told him you're either in or you're out, and then two weeks later he left the country. He claims that he's beaten, but he's beaten by the police. His speculation, not the Court's, his own speculation in the record is that the police were beating him because they thought he was with the drug cartel. So there's no even fact issue. Well, the police beating is to say that he wasn't going to get any help from the police. I mean, his basic fear is from the cartel. And is he supposed to wait until they show up with a gun and then say, oops, I think I'd better go to the United States now? Well, if the fear is imminent, he's supposed to act on it immediately, not wait a couple weeks. But the fear isn't imminent or the threat isn't imminent because this vague statement you're either in or you're out just doesn't meet this Court's standard for a prima facie showing of an imminent threat. Based on the Becerra case, for example, where a probably equally dangerous person said to the defendant, we're going to take care of your family if you don't help us out with a drug deal. The Court said, well, that's too vague. There was no imminent deadline. There was no – it was just a vague general threat. And in Vasquez-Landauber, this Court said that vague threats by unnamed individuals are simply not good enough. So there wasn't a prima facie showing in this case. The Court did not engage in any fact-finding on that issue, nor was it an imminent threat. Let me just ask you – I just have one last question. To what – this necessity defense or duress defense was not – it was not very strong. The district court rejected it. To what extent did that play in this decision not to grant him the two-level reduction for acceptance of responsibility? Well, I think it played some role, but what played the stronger role was the Court's decision that it just – as a fact-finder, in that case, as a fact-finder, they just didn't believe the story. It just didn't find it worthy of belief. And that, of course, was in the Court's full discretion to do. So to that extent, in the sense that the Court actually made a factual determination and a credibility determination about the defendant, it should not be revealable. If I can say just a couple words about the supervisor lease issue, that issue is really governed by CARDI. And in CARDI, this Court can look at the 3553A factors as the Court discussed them in general at sentencing, as well as whatever's in the PSR and in the record that this Court can do to aid it in review. Here, there was plenty of that. The Court made some very specific factual findings about why it was imposing the sentence that it did as a whole, and CARDI would have this Court look at the sentence as a whole. But there's also indication in the record as to why this added measure is necessary. For example, his promise to the previous judge that he would never come back to this country, which he broke, the fact that he violated supervisor lease the first time to come into this country, and third, his extensive criminal history and prior deportations. So in closing, the defendant was not allowed to claim duress, and the sentence here was proper, I would ask the Court to affirm. Thank you, counsel. Ms. Mitchell, you have some rebuttal time remaining. Speaking first to the issue of supervised release, the findings that the government is drawing from the record are the findings that the government is drawing from the record. They're not findings that the district court itself indicated were the factors that it considered in determining whether or not supervised release was appropriate for Mr. Ponce de Barra. In examining the record, while the government might be able to support the reasons why supervised release was applicable for Mr. Ponce de Barra, the district court did not do such findings, and there are no findings in the record that the district court engaged in any kind of particularized examination of Mr. Ponce de Barra and why supervised release was appropriate. In demonstrating contrition, Mr. Ponce de Barra, before the court, admitted his actions were illegal at ER 25. He said, I take responsibility to be here. And then at ER 114, that's why I come back to you and telling you this with my heart and my hand, he was explaining why to the court he had been there. Additionally, the issue that he was drunk, Mr. Ponce de Barra, that does not matter as to why Mr. Ponce de Barra was found in the United States, and it does not go against why he accepted responsibility for being here. Thank you, counsel. We appreciate the arguments that both of you have offered. The case just argued is submitted.
judges: Graber, Fletcher, Paez